# EXHIBIT B

*Kaynaroglu* Memorandum of Law in Support of Plaintiffs'
Unopposed Motion for Settlement Approval

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FEYZULLAH KAYNAROGLU and CIARA RODRIGUEZ, individually and on behalf of all others similarly situated, | Civil Action No. 2:24-cv-06828-BRM-AME |
| Plaintiffs, | |
| vs. | Judge Brian R. Martinotti |
| AVIS BUDGET GROUP, INC., | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**
**FOR SETTLEMENT APPROVAL**

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................. 1

II. PROCEDURAL BACKGROUND ........................................................................ 1

    1. Factual Allegations. ....................................................................................... 1

    2. Investigation, Litigation, and Settlement Negotiations ............................... 2

III. SETTLEMENT TERMS ...................................................................................... 3

    1. The Settlement Fund. .................................................................................... 3

        A. Putative Settlement Collective Members. ...................................... 4

        B. Notice and Claim Form Process. ................................................... 4

        C. Release. ........................................................................................... 5

        D. Allocation Formula and Settlement Awards. ................................. 6

        E. Service Awards. .............................................................................. 7

        F. Attorneys' Fees and Costs. ............................................................ 7

        G. Settlement Administration. ............................................................ 7

IV. ARGUMENT ....................................................................................................... 8

    1. One-Step Approval Is Appropriate for FLSA Settlements. ........................ 8

    2. The Court Should Grant Final Certification for Settlement Purposes Only. .......... 9

    3. The Settlement Is a Fair and Reasonable Resolution to a Bona Fide Dispute ...... 11

    4. The Proposed Notice Adequately Informs Putative Settlement

       Collective Members of the Terms of the Settlement. ........................................ 18

    5. Service Awards Are Warranted. ................................................................ 19

    6. Plaintiffs' Request for Attorneys' Fees and Costs Is Reasonable ........................ 20

V. CONCLUSION .................................................................................................. 26

# TABLE OF AUTHORITIES

**CASES**                                                                            **PAGE(S)**

*Altnor v. Preferred Freezer Servs., Inc.*,
    197 F. Supp. 3d 746 (E.D. Pa. 2016) ............................................................... 25

*Bellan v. Cap. Blue Cross*,
    No. 20 Civ. 744, 2022 U.S. Dist. LEXIS 43025 (M.D. Pa. Mar. 10, 2022) ......... 22, 23, 24

*Bettger v. Crossmark, Inc.*,
    No. 13 Civ. 2030, 2015 U.S. Dist. LEXIS 7213 (M.D. Pa. Jan. 22, 2015) ..................... 11

*Blofstein v. Michael's Family Rest., Inc.*,
    No. 17 Civ. 5578, 2019 U.S. Dist. LEXIS 121527 (E.D. Pa. July 19, 2019) .................. 17

*Bredbenner v. Liberty Travel, Inc.*,
    No. 09 Civ. 905, 2011 U.S. Dist. LEXIS 38663 (D.N.J. Apr. 8, 2011)..................... 20, 22

*Brown v. Kadence Int'l, Inc.*,
    No. 22 Civ. 1097, 2023 U.S. Dist. LEXIS 49202 (E.D. Pa. Mar. 23, 2023) ............. *passim*

*Brumley v. Camin Cargo Control, Inc.*,
    No. 08 Civ. 1798, 2012 U.S. Dist. LEXIS 40599 (D.N.J. Mar. 26, 2012) ...................... 25

*Clarke v. Flik Int'l Corp.*,
    No. 17 Civ. 1915, 2020 U.S. Dist. LEXIS 26306 (D.N.J. Feb. 14, 2020)........................ 8

*Davis v. Essex Cnty.*,
    No. 14 Civ. 122, 2015 U.S. Dist. LEXIS 161285 (D.N.J. Dec. 1, 2015) ............... 9, 10, 18

*Devlin v. Ferrandino & Son, Inc.*,
    No. 15 Civ. 4976, 2016 U.S. Dist. LEXIS 170823 (E.D. Pa. Dec. 9, 2016) ................... 24

*DiFlavis v. Choice Hotels Int'l Inc.*,
    No. 18 Civ. 3914, 2020 U.S. Dist. LEXIS 213353 (E.D. Pa. Nov. 16, 2020)...... 11, 17, 18

*Dominguez v. Galaxy Recycling, Inc.*,
    No. 12 Civ. 7521, 2017 U.S. Dist. LEXIS 88855 (D.N.J. June 9, 2017) ........................ 25

*Fein v. Ditech Fin., LLC*,
    No. 16 Civ. 00660, 2017 U.S. Dist. LEXIS 158479 (E.D. Pa. Sept. 27, 2017).......... 21, 24

*Fischer v. Fed. Express Corp.*,
    42 F.4th 366 (3d Cir. 2022) ........................................................................ 8

*Fitch v. Giant Eagle, Inc.*,
    No. 18 Civ. 1534, ECF No. 240 (W.D. Pa. Dec. 22, 2021) ................................................. 9

*Galt v. Eagleville Hosp.*,
    310 F. Supp. 3d 483 (E.D. Pa. 2018) ................................................................. 12

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ............................................................................. 12

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2010) ............................................................................. 21

*Hall v. Accolade, Inc.*,
    No. 20 Civ. 3423, 2020 U.S. Dist. LEXIS 52632 (E.D. Pa. Mar. 24, 2020) .................... 20

*Herbin v. PNC Fin. Servs. Grp.*,
    Nos. 19 Civ. 696, 20 Civ. 58, 2020 U.S. Dist. LEXIS 13095 (W.D. Pa. Jan.
    27, 2020) ................................................................................................... 9

*Johnson v. City of Philadelphia*,
    No. 19 Civ. 4264, 2021 U.S. Dist. LEXIS 71020 (E.D. Pa. Apr. 13, 2021) ..................... 13

*Johnson v. Free State Mgmt. Grp., LLC*,
    No. 20 Civ. 197, 2021 U.S. Dist. LEXIS 123376 (E.D. Pa. July 1, 2021) ..... 14, 15, 16, 17

*Kapolka v. Anchor Drilling Fluids USA, LLC*,
    No. 18 Civ. 1007, 2019 U.S. Dist. LEXIS 182359 (W.D. Pa. Oct. 22, 2019) .................. 26

*Karlo v. Pittsburgh Glass Works, LLC*,
    849 F.3d 61 (3d Cir. 2017) ............................................................................. 10

*Keller v. TD Bank, N.A.*,
    No. 12 Civ. 5054, 2014 U.S. Dist. LEXIS 155889 (E.D. Pa. Nov. 4, 2014) ..................... 8

*Kraus v. PA Fit II, LLC*,
    155 F. Supp. 3d 516 (E.D. Pa. 2016) ................................................................. 11

*Kyem v. Merakey USA*,
    No. 19 Civ. 05577, 2022 U.S. Dist. LEXIS 24657 (E.D. Pa. Feb. 11, 2022) ............. 12, 13

*Lawrence v. City of Philadelphia*,
    No. 03 Civ. 4009, 2004 U.S. Dist. LEXIS 8445 (E.D. Pa. Apr. 28, 2004) ...................... 14

*Loughner v. Univ. of Pittsburgh*,
    260 F.3d 173 (3d Cir. 2001) ............................................................................. 25

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350 (11th Cir. 1982) ................................................................ 11

*Martinez v. IFA Grp., Inc.*,
    No. 19 Civ. 2247, 2019 U.S. Dist. LEXIS 200116 (E.D. Pa. Nov. 19, 2019) .................. 17

*Matthews v. Phila. Corp. for Aging*,
    No. 22 Civ. 4632, 2025 U.S. Dist. LEXIS 62810 (E.D. Pa. Apr. 1, 2025) ....................... 20

*McGee v. Ann's Choice, Inc.*,
    No. 12 Civ. 2664, 2014 U.S. Dist. LEXIS 75840 (E.D. Pa. June 4, 2014) ............... 18, 22

*Mehling v. N.Y. Life Ins. Co.*,
    248 F.R.D. 455 (E.D. Pa. 2008) ................................................................ 17

*Mejia v. KVK-Tech, Inc.*,
    No. 19 Civ. 4841, 2020 U.S. Dist. LEXIS 162235 (E.D. Pa. Sept. 4, 2020) .................... 20

*Morales v. Unique Beginning Caterers Ltd. Liab. Co.*,
    No. 20 Civ. 10026, 2021 U.S. Dist. LEXIS 236744 (D.N.J. Dec. 10, 2021) ................... 24

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
    307 F.R.D. 351 (E.D. Pa. 2015) ................................................................ 16

*In re Nat'l Football League Players' Concussion Injury Litig.*,
    814 F. App'x 678 (3d Cir. 2020) ................................................................ 25

*Nguyen v. Educ. Comput. Sys., Inc.*,
    No. 22 Civ. 1743, 2024 U.S. Dist. LEXIS 140023 (W.D. Pa. Aug. 7, 2024) ............ *passim*

*Owens v. Interstate Safety Serv.*,
    No. 17 Civ. 17, 2017 U.S. Dist. LEXIS 192247 (M.D. Pa. Nov. 21, 2017) ..................... 15

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ................................................................ 16

*Reich v. Newspapers of New England, Inc.*,
    44 F.3d 1060 (1st Cir. 1995) ................................................................ 15

*In re Rite Aid Corp.*,
    396 F.3d 294 (3d Cir. 2005) ................................................................ 25

*Rouse v. Comcast Corp.*,
    No. 14 Civ. 1115, 2015 U.S. Dist. LEXIS 49347 (E.D. Pa. Apr. 15, 2015) ..................... 25

*Sam Li v. Sushi to Go Cherry Hill, LLC*,
    No. 22 Civ. 4734, 2023 U.S. Dist. LEXIS 134886 (D.N.J. Aug. 3, 2023)........................ 24

*Smith v. Merck & Co.*,
    No. 13 Civ. 2970, 2019 U.S. Dist. LEXIS 120879 (D.N.J. July 17, 2019) ........................ 9

*Starnes v. Amazon.Com, Inc.*,
    No. 23 Civ. 484, 2023 U.S. Dist. LEXIS 79515 (E.D. Pa. May 8, 2023) ............ 21, 24, 25

*Stewart v. First Transit*,
    No. 18 Civ. 3768, 2019 U.S. Dist. LEXIS 239614 (E.D. Pa. Dec. 30, 2019) ...... 21, 23, 24

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011)...................................................................................... 19, 20

*Tompkins v. Farmers Ins. Exch.*,
    No. 14 Civ. 3737, 2017 U.S. Dist. LEXIS 158478 (E.D. Pa. Sept. 27, 2017)............ 23, 24

*Vidal v. Paterson Car Emporium LLC*,
    No. 19 Civ. 12711, 2023 U.S. Dist. LEXIS 8482 (D.N.J. Jan. 18, 2023) ........................ 18

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)............................................................................................ 13

*In re Wawa, Inc.*,
    141 F.4th 456 (3d Cir. 2025) ......................................................................................... 25

*Weirbach v. Cellular Connection*,
    No. 19 Civ. 5310, 2020 U.S. Dist. LEXIS 209984 (E.D. Pa. Nov. 10, 2020)........... *passim*

## I.   INTRODUCTION

Named Plaintiffs Feyzullah Kaynaroglu and Ciara Rodriguez, as well as the 13 Opt-in Plaintiffs who joined this case (together, "Plaintiffs") and Defendant Avis Budget Car Rental, LLC ("Avis" or "Defendant") have agreed to resolve this wage-and-hour lawsuit on a collective basis, subject to this Court's approval.  The proposed Settlement, which follows a thorough investigation, nearly two years of contested litigation, and extensive arm's-length negotiations, is fair, reasonable, and adequate, and satisfies all the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement.  Accordingly, Plaintiffs respectfully request that the Court: (1) approve the $1,795,000 Maximum Gross Settlement Amount as fair, adequate, and reasonable; (2) grant final certification of the Putative Settlement Collective for settlement purposes only; (3) authorize the distribution of the Notice Packet, in accordance with the terms of the Settlement Agreement[1]; (4) approve service awards of $8,000 per Named Plaintiff; (5) approve Plaintiffs' request for one-third of the Maximum Gross Settlement Amount in attorneys' fees and $25,000 in expenses; (6) enjoin Participating Settlement Collective Members from pursuing any released claims in the future; (7) dismiss the Litigation with prejudice; and (8) retain jurisdiction to enforce the Settlement Agreement.

## II.   PROCEDURAL BACKGROUND

### 1.   Factual Allegations.

Kaynaroglu and Rodriguez ("Named Plaintiffs") bring this class and collective action under the FLSA and New Jersey and New York state law[2] for unpaid overtime wages on behalf of

---

[1]   The Settlement Agreement and Release of Claims ("Settlement Agreement") is attached as Exhibit A to the Declaration of Justin M. Swartz ("Swartz Decl.").  The Notice and Claim Form are attached as Exhibit 2 to the Settlement Agreement.

[2]   For settlement purposes, Plaintiffs do not seek class certification of their claims under New Jersey and New York state law.  Putative Settlement Collective Members will release their state law claims only if they affirmatively opt in to the settlement.

themselves and others who worked as Operations Managers for Avis. They allege that Avis misclassified them as exempt under the FLSA and failed to pay them overtime for the hours they worked over 40 hours in a workweek. ECF No. 54 (Amended Complaint) ¶¶ 35-37. Named Plaintiffs allege that they spent their days performing non-exempt tasks, including staffing the vehicle rental counter, driving cars from one Avis location to another, washing cars, and handling returns. Amended Complaint ¶¶ 5, 44. Avis denies those allegations and contends that its Operations Managers are properly classified as exempt from overtime under federal and applicable state law. *See generally* ECF No. 57.

### 2. Investigation, Litigation, and Settlement Negotiations.

Before initiating this action, Plaintiffs' counsel conducted a thorough investigation, which included corporate research, and factual and legal research regarding the merits of Plaintiffs' claims, possible defenses, and the likelihood of class and collective certification. Swartz Decl. ¶ 14. On August 28, 2023, Plaintiffs informed Avis of their claims and invited it to consider pre-suit settlement discussions. *Id.* ¶ 15. The Parties mediated the matter unsuccessfully on May 15, 2024. *Id.* ¶ 16.

Accordingly, on June 7, 2024, Named Plaintiffs initiated this lawsuit, ECF No. 1, and appended to their complaint "Consent to Join" forms signed by nine additional Opt-in Plaintiffs.[3] On August 14, 2024, Avis moved for partial dismissal of the complaint, ECF No. 20, and on August 16, 2024, Plaintiffs moved for Court-Authorized Notice pursuant to 29 U.S.C. § 216(b), ECF No. 22. On March 27, 2025, the Court denied the motion for partial dismissal and partially granted the motion for Court-Authorized Notice. ECF No. 47. The Court approved the proposed notice to members of the collective on May 6, 2025. ECF No. 56. On May 28, 2025, the Parties

---

[3]     Andrew North, Niya Lloyd, Anthony Ramirez, and Luis Hiciano subsequently opted into the litigation. *See* ECF Nos. 3, 6, 27, 41.

jointly requested a stay of the proceedings to exchange informal discovery on issues related to settlement and to resume settlement discussions. ECF No. 60. The Court stayed the proceedings before notice was issued to collective members. ECF No. 61.

On September 16, 2025, the Parties attended a remote mediation session with Michael Russell, an experienced wage-and-hour mediator. Swartz Decl. ¶ 18. Though the Parties were unable to reach a settlement at mediation and the mediator's first proposal was rejected, the Parties agreed to continue settlement discussions. *Id.* ¶ 19. Following three months of continued arm's-length negotiations, the Parties reached an agreement after the mediator made a second proposal to resolve the action, which both Parties accepted. *Id.* ¶ 20. The Parties then executed a term sheet on January 7, 2026. The Parties finalized the terms of the settlement and memorialized them in the Settlement Agreement, which was fully executed on May 6, 2026. *Id*.

III.    **SETTLEMENT TERMS**

1.    **The Settlement Fund.**

The Settlement Agreement establishes a total settlement fund of $1,795,000 to resolve these claims against Avis. Ex. A (Settlement Agreement) § II.B.5. The Maximum Gross Settlement Amount represents the maximum amount Avis has agreed to pay to resolve and settle these claims. *Id*. §§ II.B.5, II.D.12. The Maximum Gross Settlement Amount includes: (i) settlement amounts to Participating Collective Members; (ii) service awards to Named Plaintiffs; (iii) the Settlement Administrator's costs and expenses; and (iv) attorneys' fees and costs to Plaintiffs' counsel. *Id*. § II.B.5. The Maximum Gross Settlement Amount also includes all employee-paid payroll taxes and employer-paid payroll taxes. *Id*.

### A.    Putative Settlement Collective Members.

Putative Settlement Collective Members are individuals who are or were employed by Avis as Operations Managers in any Avis Budget Car Rental, LLC location in the United States or Puerto Rico from December 15, 2022, through May 6, 2026.  *Id*. § II.B.10.

### B.    Notice and Claim Form Process.

Within 30 days of judicial approval of the Settlement Agreement, so long as the Settlement Administrator has signed Defendant's standard data processing agreement to ensure protection of private information, Avis will provide the Settlement Administrator a database containing the following information: (a) the name, employee identification number, last known address, and telephone number of each Putative Settlement Collective Member; (b) the employment dates for each Putative Settlement Collective Member for the period; (c) the number of workweeks recorded by each Putative Settlement Collective Member during the relevant Statute of Limitations Period; and (d) any additional agreed-upon information necessary to perform calculations. Class Counsel will not have access to this data.  *Id*. § II.D.2.

Within 14 days of receiving that database, the Settlement Administrator will confirm the accuracy of Putative Settlement Collective Members' addresses and where necessary ascertain the last known address of Putative Settlement Collective Members.  *Id*. § II.D.4.  Within 30 days of receiving the database, the Settlement Administrator will mail each Putative Settlement Collective Member a Notice Packet, attached as Exhibit 2 to the Settlement Agreement.  The Notice Packet, consisting of a Settlement Notice, Claim Form, and Release, will explain the lawsuit and provide instructions on how to submit a Claim Form to become a Participating Settlement Collective Member.  *Id*. § II.C.  The Notice Packet will also include a postage-paid return envelope.  *Id*.

To become a Participating Settlement Collective Member, Putative Settlement Collective Members must submit a Claim Form within 45 days from the Settlement Administrator's initial mailing of the Notice Packets. *Id*. §§ II.B.1, II.D.7. Putative Settlement Collective Members may submit a Claim Form and Release via mail or e-mail. *Id*. § II.E. The Settlement Administrator will perform one skip trace on Putative Settlement Collective Members whose Notice Packets are returned as undeliverable and promptly re-mail Notice Packets upon identifying an updated address or upon a Putative Settlement Collective Member's request. *Id*. § II.D.4. The Settlement Administrator will also send deficiency letters to Putative Settlement Collective Members who submit incomplete Claim Forms as needed. *Id.* Putative Settlement Collective Members who do not timely return a Claim Form and Release will not release any claims and will not receive a settlement payment. *Id*. § II.B.11.

### C.      Release.

Participating Settlement Collective Members will release Avis and all releasees from their Released Claims, defined as "all claims, charges, complaints, liens, demands, causes of action, obligations, damages and liabilities, known or unknown, suspected or unsuspected, relating to the allegations that the Putative Settlement Collective Members were not properly compensated for all hours worked during their employment as exempt-classified Operations Managers regardless of whether such claims arise under the FLSA, 29 U.S.C. § 201, *et seq.,* or any other federal, state, and/or local law, statute, ordinance, regulation, or common law, through and including the date of the Court's entry of the Dismissal and Approval Order." *Id*. § II.B.12. If the Court approves the service awards to Named Plaintiffs, Named Plaintiffs will provide a general release and waive claims to future employment with Avis, as described in the Settlement Agreement. *Id*. § II.D.6.

**D.    Allocation Formula and Settlement Awards.**

Each Putative Settlement Collective Member will be allocated a share of the Net Settlement Fund proportionate to the number of workweeks worked during the Statute of Limitations Period applicable[4] to that Putative Settlement Collective Member. *Id*. § II.D.3.  The workweek value for Putative Settlement Collective Members subject to arbitration agreements or who did not work for Defendant as an Operations Manager after December 15, 2023, shall equal one-half of the value of the workweeks of Putative Settlement Collective Members who are not subject to arbitration agreements and who worked for Avis as an Operations Manager after December 15, 2023. *Id.*

Within 14 days of receiving the employee database from Avis, the Settlement Administrator will calculate a provisional allocation to each Putative Settlement Collective Member a share of the Net Settlement Fund proportionate to the number of workweeks worked during the relevant period. *Id*. § II.D.3.  Following the notice period, within 15 business days after the last date to submit Claim Forms, the Settlement Administrator will then calculate the final amount to be paid to each Participating Settlement Collective Member pursuant to the formula in the Settlement Agreement and provide this Payout Calculation to all counsel for review. *Id*. § II.D.9.  Avis will fund the portion of the settlement fund dedicated to settlement awards for Participating Settlement Collective Members and employer-paid payroll taxes within 10 business days after the later of the following two conditions have been met: (1) at least 10 business days have passed since counsel confirmed the Settlement Administrator's Payout Calculation; and (2) the time for an appeal of this Court's order dismissing the case has passed without an appeal, or

---

[4]    The Statute of Limitations Period varies depending on whether the Operations Manager worked in New York, New Jersey, or California, based on the statute of limitations for the pendant state wage and hour claims, and depending on whether the Operations Manager opted in to the litigation prior to settlement. *Id*. § II.B.16.

the appellate process is exhausted and the dismissal order has been affirmed, whichever is applicable. *Id*. § II.D.10. Within 15 days of Avis funding this portion of the settlement fund, the Settlement Administrator will mail all settlement checks to Participating Settlement Collective Members. *Id*. § II.D.11. Participating Settlement Collective Members will have 120 days after the date the checks are mailed to cash, deposit, or otherwise negotiate their checks. *Id*. § II.D.12. Any unclaimed portion of the Net Settlement Fund, including any settlement checks not negotiated within 120 days of mailing, will remain Avis's exclusive property. *Id.*

### E.       Service Awards.

The Settlement Agreement provides that, subject to Court approval, the Named Plaintiffs will each receive a service award of $8,000 in return for services rendered to Putative Settlement Collective Members. *Id*. § II.D.6. Named Plaintiffs assisted counsel in the investigation of the claims, helped prepare for both mediations by discussing mediation strategy and settlement terms, remained on-call and available during both mediation sessions, and reviewed, approved, and signed the settlement agreement. Swartz Decl. ¶¶ 25-27.

### F.       Attorneys' Fees and Costs.

Under the Settlement Agreement, Plaintiffs' counsel asks the Court to approve an award of $598,333.33 (one third of the $1,795,000 Maximum Gross Settlement Amount) as attorneys' fees, plus an additional $25,000 to reimburse Plaintiffs' counsel for their reasonable out-of-pocket costs and expenses (for a total of $623,333.33). *Id*. § II.D.5. Avis does not oppose this payment.

### G.       Settlement Administration.

The Parties will retain an experienced Settlement Administrator. The Settlement Administrator's fees will be paid from the total settlement amount. Settlement Agreement § II.B.6. The fees will cover, among other obligations, mailing Notice Packets to Putative Settlement

Collective Members; confirming the accuracy of addresses; sending deficiency letters to Putative Settlement Collective Members as needed; re-mailing Notice Packets returned as undeliverable or where a new address is located; determining the amount of settlement awards due and sharing those calculations with counsel; maintaining an email address Putative Settlement Collective Members can use to make inquiries; distributing Court-approved attorneys' fees to Plaintiffs' counsel; and providing W-2s and 1099 forms as required by law.  *Id.* § II.C.

## IV.    <u>ARGUMENT</u>

### 1.    **One-Step Approval Is Appropriate for FLSA Settlements.**

Section 216(b) of the FLSA permits employees to bring private actions to recover wages on their behalf and on behalf of "other employees similarly situated."  29 U.S.C. § 216(b).  Courts in the Third Circuit regularly review settlements of FLSA claims.  *See, e.g.*, *Brown v. Kadence Int'l, Inc.*, No. 22 Civ. 1097, 2023 U.S. Dist. LEXIS 49202, at *25 (E.D. Pa. Mar. 23, 2023) (reviewing and approving FLSA settlement); *Clarke v. Flik Int'l Corp.*, No. 17 Civ. 1915, 2020 U.S. Dist. LEXIS 26306, at *1 (D.N.J. Feb. 14, 2020) ("Although Third Circuit precedent is silent on the matter of judicial approval of FLSA settlements, district courts in this jurisdiction abide by the principle that settlement of collective action FLSA claims under 29 U.S.C. § 216(b) requires court approval.").  Crucially, "[i]n order to be bound by a FLSA collective action settlement, potential class members must affirmatively 'opt in.'" *Keller v. TD Bank, N.A.*, No. 12 Civ. 5054, 2014 U.S. Dist. LEXIS 155889, at *36 (E.D. Pa. Nov. 4, 2014) (citing *Lusardi v. Lechner*, 855 F.2d 1062, 1070-71 (3d Cir. 1988)).  "FLSA opt-in collectives stand in contrast to Rule 23 opt-out class actions, where class members are barred from relitigating their claims if they fail to affirmatively exclude themselves from the suit."  *Brown*, 2023 U.S. Dist. LEXIS 49202, at *11-12.  Many of the rules specific to Rule 23 class actions exist "to protect the due process rights of absent class members, a consideration not pertinent under the . . . FLSA."  *Fischer v. Fed. Express*

8

*Corp.*, 42 F.4th 366, 376 (3d Cir. 2022).  Thus, the standard for approval of an FLSA settlement is "lower" than for a settlement under Rule 23.  *Smith v. Merck & Co.*, No. 13 Civ. 2970, 2019 U.S. Dist. LEXIS 120879, at *13 n.5 (D.N.J. July 17, 2019) (citing *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102, at *13 (E.D.N.Y. Feb. 18, 2011)).

A one-step settlement approval process is widely recognized as the appropriate procedure for settling a collective action under the FLSA.  *See, e.g.*, *Brown*, 2023 U.S. Dist. LEXIS 49202, at *12 (allowing parties to "satisfy their notice obligation by enclosing the [n]otice with each collective member's . . . [c]heck"); *Weirbach v. Cellular Connection*, No. 19 Civ. 5310, 2020 U.S. Dist. LEXIS 209984 (E.D. Pa. Nov. 10, 2020) (approving one-step settlement process); *Herbin v. PNC Fin. Servs. Grp.*, Nos. 19 Civ. 696, 20 Civ. 58, 2020 U.S. Dist. LEXIS 13095, at *1 (W.D. Pa. Jan. 27, 2020) (approving notice forms, including opt-in information, and settlement simultaneously); *Davis v. Essex Cnty.*, No. 14 Civ. 122, 2015 U.S. Dist. LEXIS 161285, at *11 (D.N.J. Dec. 1, 2015) (one-step settlement process); *Fitch v. Giant Eagle, Inc.*, No. 18 Civ. 1534 (W.D. Pa. Dec. 22, 2021) (ECF No. 240).

Here, only individuals who submit a Claim Form and Release will receive payment and release certain claims, as outlined in the Settlement Agreement.  Any Operations Manager who chooses not to participate will not release any claims.  Furthermore, the Court has already granted conditional certification of the class – in other words, the Court already concluded that notice should go out to the putative members of the collective. *See* ECF No. 47.

**2.      The Court Should Grant Final Certification for Settlement Purposes Only.**

This Court previously granted conditional certification of the Collective, ECF No. 47, and Plaintiffs respectfully request it grant final certification for settlement purposes only.  To proceed with final certification of the proposed collective in this context, a court must determine that employees in the collective are "similarly situated," within the meaning of § 216(b) of the

9

FLSA. *See Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 85 (3d Cir. 2017). "Being 'similarly situated' means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Id.* (cleaned up) (quoting *Halle v. W. Penn. Allegheny Health Sys. Inc.*, 842 F.3d 215, 223 (3d Cir. 2016)). In the Third Circuit, the relevant factors include "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Karlo*, 849 F.3d at 86 (emphasis omitted). Courts may also conclude that Plaintiffs are dissimilar "based on the existence of individualized defenses." *Id.* (emphasis omitted).

Here, the Putative Settlement Collective Members are similarly situated within the meaning of § 216(b). Named Plaintiffs brought this case only on behalf of other Operations Managers. *See* Amended Complaint ¶ 1. The collective encompasses a group of employees who had the same job and worked over 40 hours a week during the same general period. Putative Settlement Collective Members shared the same day-to-day responsibilities: they checked out rental cars and checked them back in; they inspected cars and refueled them; they drove cars from one location to another. *See* Amended Complaint ¶ 5. As a result, Plaintiffs all advance the same claims of misclassification in this case, and Plaintiffs all seek the same relief: compensation for unpaid overtime wages. Avis does not oppose Plaintiffs' motion for final certification of the collective for settlement purposes. For these reasons, the Court should conclude that Putative Settlement Collective Members are "similarly situated" within the meaning of § 216(b) and grant final certification to the collective for settlement purposes. *See Davis*, 2015 U.S. Dist. LEXIS 161285, at *6-7 (certifying FLSA collective for settlement because collective members held the same job, worked overtime during the same period, and sought the same relief); *Brown*, 2023 U.S.

10

Dist. LEXIS 49202, at *14 (certifying collective where members had similar roles and salaries and advanced the same claim, though they worked in at least 15 states).

### 3. The Settlement Is a Fair and Reasonable Resolution to a Bona Fide Dispute.

To approve a settlement under the FLSA, a court must determine that the settlement is a "fair and reasonable resolution" to a bona fide dispute. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *see Bettger v. Crossmark, Inc.*, No. 13 Civ. 2030, 2015 U.S. Dist. LEXIS 7213, at *9 (M.D. Pa. Jan. 22, 2015) ("In the absence of guidance from the Third Circuit, courts have routinely employed the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores* to evaluate proposed settlement agreements.") (internal citation omitted). Courts in this Circuit generally follow a three-step process. *See DiFlavis v. Choice Hotels Int'l Inc.*, No. 18 Civ. 3914, 2020 U.S. Dist. LEXIS 213353, at *6 (E.D. Pa. Nov. 16, 2020). First, "the settlement [must] concern[] a 'bona fide dispute.'" *Id.* (quoting *Howard v. Phila. Hous. Auth.*, 197 F. Supp. 3d 773, 777 (E.D. Pa. 2016)). Next, the settlement must be "fair and reasonable for the employees." *Id.* Finally, the settlement must "further[] the FLSA's implementation in the workplace." *Id.*

This settlement meets this standard. *First*, it resolves a bona fide dispute. A dispute is bona fide when it falls "within the contours of the FLSA and there [is] evidence of the defendant's intent to reject or actual rejection of th[e] claim when it is presented." *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016). Here, Plaintiffs allege that Avis misclassified them as exempt under the FLSA and, as a result, failed to pay them overtime, Amended Complaint ¶ 6, and Defendant denies all liability. The Parties have engaged in vigorous litigation for almost two years and briefed a variety of contested motions. *See, e.g.*, ECF Nos. 20, 22, 34, 36. Most saliently, Avis filed a motion to dismiss, arguing that Plaintiffs' FLSA claims were barred by the relevant statute of limitations. *See generally* ECF No. 20-1. Avis's motion, combined with its continued

11

denial that it has violated the law, demonstrates that the underlying dispute between the parties is real and bona fide. *See Brown*, 2023 U.S. Dist. LEXIS 49202, at *16-17 (finding that settlement resolved bona fide dispute where defendant denied all liability and raised affirmative defenses); *Kyem v. Merakey USA*, No. 19 Civ. 05577, 2022 U.S. Dist. LEXIS 24657, at *7-8 (E.D. Pa. Feb. 11, 2022) (finding bona fide dispute because parties disputed, among other issues, the statute of limitations and the applicability of liquidated damages).

*Second*, the settlement itself is fair and reasonable. As a preliminary matter, the settlement is entitled to an "initial presumption of fairness" because the parties engaged in arm's-length negotiations, including informal discovery and mediation before an experienced wage-and-hour mediator. *Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483, 493 (E.D. Pa. 2018). In addition to considering this initial presumption, courts in the Third Circuit rely on the factors identified in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), to determine whether a settlement is fair and reasonable:

> "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risk of establishing damages; (6) the risk of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."

*Id.* at 157; *see Brown*, 2023 U.S. Dist. LEXIS 49202, at *18-25 (applying *Girsh* factors to FLSA settlement). As explained below, these factors weigh in favor of approval.

The first factor weighs strongly in favor of settlement. Had a settlement not been reached, the Parties would have engaged in a lengthy period of discovery, including corporate discovery, Named Plaintiff depositions, and following the collective action notice period, opt-in discovery. At the conclusion of this lengthy discovery period, Avis likely would have moved for

12

decertification of the collective, and Plaintiffs would have likely moved for class certification under Rule 23. The Parties may have filed motions for summary judgment. Given the size of the collective, the trial would likely have been long and complex. In short, the Parties would have expended substantial resources on the litigation. Accordingly, the first factor supports approval. *See Brown*, 2023 U.S. Dist. LEXIS 49202, at *19 (describing anticipated motion practice and complexity of trial in weighing first *Girsh* factor); *Kyem*, 2022 U.S. Dist. LEXIS 24657, at *9-10 (determining that factor pointed towards approval where parties would have conducted additional discovery and likely engaged in extensive motions practice).

The next factor, the "reaction of plaintiffs" to the proposed settlement, is neutral. "[W]here putative collective members will receive *post hoc* notice of the Settlement Agreement via the 'one-step' approval process, the Court cannot accurately assess whether there are any putative members of the collective who might object to the Agreement's terms." *Brown*, 2023 U.S. Dist. LEXIS 49202, at *20; *see Johnson v. City of Philadelphia*, No. 19 Civ. 4264, 2021 U.S. Dist. LEXIS 71020, at *13 (E.D. Pa. Apr. 13, 2021) ("The second *Girsh* factor . . . does not apply at this stage of the proceedings because the collective has not yet been formally notified of the settlement."). Here, Putative Settlement Collective Members have not yet received Notice, so Plaintiffs cannot determine how they will react to the settlement. That said, none of the Opt-in Plaintiffs have raised any objections to the settlement. In short, this factor weighs neither in favor of nor against approval.

To assess the third factor, a court must ask "whether counsel had an adequate appreciation of the merits of the case before negotiating" the settlement. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (citation omitted); *see Brown*, 2023 U.S. Dist. LEXIS 49202, at *20-21. Here, the Parties reached this settlement after engaging in comprehensive discussions

13

about claims and defenses (including briefing Avis's motion to dismiss Plaintiffs' FLSA claims). As the Parties worked towards the second mediation, Avis provided Plaintiffs with payroll data, which further deepened Plaintiffs' understanding of the case, and the mediation itself – before an experienced mediator – expanded the Parties' understanding of the claims and defenses at issue. *See Johnson v. Free State Mgmt. Grp., LLC*, No. 20 Civ. 197, 2021 U.S. Dist. LEXIS 123376, at *13-14 (E.D. Pa. July 1, 2021) (weighing mediation under third *Girsh* factor). Plaintiffs conducted a thorough analysis of the payroll data to determine the unpaid wages allegedly owed to Putative Settlement Collective Members. Given the exchange and analysis of payroll data, as well as the Parties' ongoing discussions about Avis's defenses and Plaintiffs' claims, the Court should find that counsel had an adequate appreciation of the merits of this case. *See Brown*, 2023 U.S. Dist. LEXIS 49202, at *20-21 (finding third factor weighed in favor of approval where parties exchanged payroll data and engaged in discussions about defenses).

As partially set forth above, the significant risks that Plaintiffs face also counsel strongly in favor of approval. *See id.* at *21-22 (weighing fourth, fifth, and sixth factors together). *First*, at the close of discovery, Avis may have succeeded in moving to decertify the collective and/or opposing Plaintiffs' motion for class certification. Swartz Decl. ¶ 21. Avis likely would have emphasized the differences between its locations to argue that individualized questions precluded collective certification. Plaintiffs, of course, disagree with these arguments, but other defendants have prevailed on similar arguments in other FLSA cases. *See, e.g.*, *Lawrence v. City of Philadelphia*, No. 03 Civ. 4009, 2004 U.S. Dist. LEXIS 8445, at *7-8 (E.D. Pa. Apr. 28, 2004) (decertifying collective action as to off-the-clock claims where plaintiffs worked in different locations with different supervisors). *Second*, Avis likely would have argued at trial that the administrative exemption applied to all Operations Managers. Though Plaintiffs again disagree

14

with this argument, counsel recognizes that exemption inquiries are often acutely context specific. Swartz Decl. ¶ 21. *Third*, Plaintiffs would also have faced serious risks in proving damages in this litigation. Plaintiffs would have needed to establish that Operations Managers consistently worked over 40 hours a week across the country. However, the absence of contemporaneous time records would have rendered that task more difficult. Avis would also have likely argued that damages should be calculated with the "fluctuating workweek" method, which, if successful, could significantly reduce collective members' damages. *Id.* *Fourth*, Avis would have vigorously litigated the question of willfulness, crucial to the dispute over the relevant statute of limitations and the issue of liquidated damages. *See, e.g.*, *Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1079-80 (1st Cir. 1995) (affirming lack of willfulness even though several employees testified they had been instructed by superiors to report no more than forty hours on their weekly timecards). In sum, a collective trial would have been risky and time-consuming – either side could then have appealed, further extending the uncertainty for Putative Settlement Collective Members. *Finally*, Avis contended throughout this litigation that many Operations Managers signed arbitration agreements, which could have prevented them from bringing their claims to court. Plaintiffs dispute the enforceability of these arbitration agreements but concede that these issues create additional uncertainty in the litigation. Swartz Decl. ¶ 21. These substantial risks all weigh in favor of approving the settlement. *See Brown*, 2023 U.S. Dist. LEXIS 49202, at *22 (weighing risk of decertification, as well as risk of proving damages and establishing applicability of three-year statute of limitations); *Owens v. Interstate Safety Serv.*, No. 17 Civ. 17, 2017 U.S. Dist. LEXIS 192247, at *6 (M.D. Pa. Nov. 21, 2017) (weighing plaintiff's challenge of proving willful violation of FLSA); *Johnson*, 2021 U.S. Dist. LEXIS 123376, at *14 (finding risks of bringing matter to trial weighed in favor of settlement approval).

15

The eighth and ninth *Girsh* factors[5] also support settlement. *See Johnson*, 2021 U.S. Dist. LEXIS 123376, at *15-16 (analyzing eighth and ninth factors together). To assess the reasonableness of a settlement amount, "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 322 (3d Cir. 1998) (citation omitted). Again, many Operations Managers may have signed arbitration agreements, which could have effectively prevented them from pursuing the case at all, as each individual recovery, while meaningful, is likely too small to be economically viable to pursue as an individual claim. This settlement, therefore, is the only vehicle by which many collective members could reasonably expect to recover anything from this misclassification case. Here, the settlement represents a significant percentage of the recovery that Putative Settlement Collective Members would have achieved if they had prevailed in this litigation and survived an appeal. For instance, if Plaintiffs had succeeded on most of their FLSA arguments – including establishing a three-year statute of limitations, proving 3.5 hours of unpaid overtime per week class-wide in 80% of workweeks, and using the time-and-a-half method for calculating damages – the gross settlement amount represents approximately 17% of their unpaid wages. Swartz Decl. ¶ 22. However, if Avis had prevailed on some of its countervailing arguments – resulting, for instance, in only 1.5 hours of unpaid overtime per week class-wide and overtime calculated at a fluctuating workweek rate in 80% of workweeks – then the total settlement amount reflects approximately *all* of the Operations Managers' unpaid wages. *Id.* ¶ 23. Courts in

---

[5] The seventh *Girsh* factor, the ability of the defendant to withstand a greater judgment, is irrelevant. *See In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 394 (E.D. Pa. 2015) ("[W]hen there is no reason to believe that defendants face any financial instability, this factor is largely irrelevant." (cleaned up and citation omitted)). Here, Plaintiffs have no reason to suspect that Avis faces financial difficulties.

16

the Third Circuit have regularly approved settlement amounts in similar ranges.  *See, e.g.*, *Mehling v. N.Y. Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (finding gross settlement amount reasonable that represented approximately 20% of best possible recovery if court accepted theories of recovery and damages); *Weirbach*, 2020 U.S. Dist. LEXIS 209984, at *12 (approving settlement that resulted in collective members receiving one third of estimated unpaid wages); *Blofstein v. Michael's Family Rest., Inc.*, No. 17 Civ. 5578, 2019 U.S. Dist. LEXIS 121527, at *25-26 (E.D. Pa. July 19, 2019) (approving gross settlement that represented 30% of estimated damages); *Martinez v. IFA Grp., Inc.*, No. 19 Civ. 2247, 2019 U.S. Dist. LEXIS 200116, at *6 (E.D. Pa. Nov. 19, 2019) (holding that plaintiff's settlement for about "half of his claimed [overtime] wages" was reasonable).  In sum, the relevant *Girsh* factors support the conclusion that the settlement is fair and reasonable.

Finally, the Settlement Agreement furthers the purposes of the FLSA.  *See DiFlavis*, 2020 U.S. Dist. LEXIS 213353, at *17.  The Agreement advances those purposes by guaranteeing recovery to hundreds of Operations Managers who might not otherwise have pursued their claims because of arbitration agreements.  In addition, the Settlement Agreement promotes the purposes of the statute by including only a narrowly tailored release.  *See id.* (analyzing releases to determine whether agreement frustrates purposes of FLSA).  Here, Participating Settlement Collective Members waive and release only their federal and state claims "relating to the allegations that the Putative Settlement Collective Members were not properly compensated for all hours worked during their employment as exempt-classified Operations Managers."  *See* Settlement Agreement § II.B.12.  Thus, the waiver and release do "not exceed the basis" of the operative complaint.  *See DiFlavis*, 2020 U.S. Dist. LEXIS 213353, at *18.  Courts in the Third Circuit have regularly approved similar releases.  *See, e.g.*, *Johnson*, 2021 U.S. Dist. LEXIS 123376, at *17 (approving

17

narrowly tailored waiver of FLSA and state wage and hour claims); *Vidal v. Paterson Car Emporium LLC*, No. 19 Civ. 12711, 2023 U.S. Dist. LEXIS 8482, at *8 (D.N.J. Jan. 18, 2023) (same).[6]

In sum, the Settlement Agreement is a fair and reasonable resolution to a bona fide dispute, and its terms do not undermine or frustrate the purpose of the FLSA.

### 4. The Proposed Notice Adequately Informs Putative Settlement Collective Members of the Terms of the Settlement.

The Court should approve the proposed Notice Packet and Claim Form because they provide accurate and timely notice of the pending collective action, and they will allow Putative Settlement Collective Members to make an informed decision about whether to participate. *See* Ex. 2 (Notice and Claim Form). The proposed Notice Packet and Claim Form clearly describe the terms of the settlement, including the settlement award calculation method, each Operations Manager's potential award, the opt-in process and its consequences, and the payment of attorneys' fees and costs. *See, e.g.*, *Davis*, 2015 U.S. Dist. LEXIS 161285, at *11 (approving notice that described relevant terms of FLSA settlement); *Weirbach*, 2020 U.S. Dist. LEXIS 209984, at *17-18 (approving notice because it "informs the [c]ollective members about the settlement; identifies the claims that they are releasing; sets forth the formula for calculating each individual's settlement payment; and provides instructions for submitting a claim"). The documents also provide Putative Settlement Collective Members with the contact information of Plaintiffs'

---

[6] The narrow confidentiality provision in the Settlement Agreement is not in tension with the purposes of the FLSA. *See* Settlement Agreement § II.D.6.a. Named Plaintiffs and Opt-in Plaintiffs remain "free to discuss the litigation with friends, family, employees, and individuals not affiliated with the media." *McGee v. Ann's Choice, Inc.*, No. 12 Civ. 2664, 2014 U.S. Dist. LEXIS 75840, at *9 (E.D. Pa. June 4, 2014). Accordingly, this limited confidentiality clause – which does not apply to Putative Settlement Collective Members – does not frustrate the purposes of the FLSA. *See, e.g.*, *DiFlavis*, 2020 U.S. Dist. LEXIS 213353, at *18 (approving settlement agreement with similar narrow confidentiality provision).

counsel, *see Brown*, 2023 U.S. Dist. LEXIS 49202, at *13 (approving notice that explains terms of settlement and shares attorney contact information), and the "essential terms" of the Settlement Agreement appear in "simple and straightforward language rather than cumbersome legalese," *see Weirbach*, 2020 U.S. Dist. LEXIS 209984, at *17-18. Accordingly, the Court should approve the Notice Packet and Claim Form.

     **5.     Service Awards Are Warranted.**

In addition to their *pro rata* share of the Net Settlement Fund, Named Plaintiffs each request an $8,000 service award for their participation and assistance in the identification, investigation, and prosecution of this lawsuit. *See* Settlement Agreement § II.D.6. Such service awards are standard in FLSA collective action settlements, *see Brown*, 2023 U.S. Dist. LEXIS 49202, at *25 ("Service payments are a common feature of collective action settlements."), and they serve "to compensate named plaintiffs for the services they provided and the risks they incurred during the course of [the] litigation and to reward the public service of contributing to the enforcement of mandatory laws," *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011) (quoting *Bredbenner v. Liberty Travel, Inc.*, No. 09 Civ. 905, 2011 U.S. Dist. LEXIS 38663, at *63-64 (D.N.J. Apr. 8, 2011)). Here, Named Plaintiffs' actions exemplify the very purpose of service awards: both Named Plaintiffs assisted counsel in the development, investigation, and litigation of these claims. Throughout the various phases of the litigation, they have communicated with Plaintiffs' counsel, shared relevant factual information, including documents, and submitted declarations. Named Plaintiffs made themselves available to answer questions throughout both mediation sessions. Swartz Decl. ¶¶ 25-27. In short, Named Plaintiffs' involvement in this litigation justifies these service awards. *See Weirbach*, 2020 U.S. Dist. LEXIS 209984, at *14 (approving service award because of named plaintiffs' "invaluable service in aid of [p]laintiffs' prosecution of this matter").

19

Named Plaintiffs have assisted the public in enforcing federal and state labor laws, and in doing so, they have taken on substantial risks. *See Sullivan*, 667 F.3d at 333 n.65; *Weirbach*, 2020 U.S. Dist. LEXIS 209984, at *14 ("[I]ndividuals who serve as named plaintiffs in employment rights cases do so at the risk or their current or future employment."); *Mejia v. KVK-Tech, Inc.*, No. 19 Civ. 4841, 2020 U.S. Dist. LEXIS 162235, at *10 (E.D. Pa. Sept. 4, 2020) ("Plaintiffs' argument that putting one's name on a publicly filed employment rights lawsuit comes with substantial risk to current and future employment is well-taken."). Here, both Named Plaintiffs accepted the risks that came with prosecuting this case, including the risk of finding themselves barred from future employment in the industry. Swartz Decl. ¶ 28.

Moreover, a service award of $8,000 per Named Plaintiff is well within the range of service awards approved in other wage-and-hour cases in the Third Circuit, and both service awards together represent less than 1% of the total settlement amount. *See, e.g.*, *Matthews v. Phila. Corp. for Aging*, No. 22 Civ. 4632, 2025 U.S. Dist. LEXIS 62810, at *14 (E.D. Pa. Apr. 1, 2025) (approving service award of $7,500 for named plaintiff, where total settlement amount exceeded $1 million); *Hall v. Accolade, Inc.*, No. 20 Civ. 3423, 2020 U.S. Dist. LEXIS 52632, at *25 (E.D. Pa. Mar. 24, 2020) (approving a $10,000 service award to plaintiff, compared to total settlement of around $1.1 million); *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *66-67 (approving $10,000 service payment to each named plaintiff in FLSA case). Accordingly, the Court should approve the service awards for Named Plaintiffs.

**6.     Plaintiffs' Request for Attorneys' Fees and Costs Is Reasonable.**

Plaintiffs respectfully request that the Court approve counsel's requested attorneys' fees and costs in the successful prosecution of this case. Under either the percentage-of-recovery approval or the lodestar formula, Plaintiffs' request for one third of the total settlement is fair and reasonable. Courts in the Third Circuit "generally favor" the percentage-of-recovery approach to

20

compensate counsel in FLSA cases or cases brought under state wage-and-hour laws as a collective

action. *Brown*, 2023 U.S. Dist. LEXIS 49202, at *27. "This is because the percentage-of-recovery

method encourages efficiency and 'rewards counsel for success and penalizes it for failure.'" *Id.*

(citing *In re Prudential*, 148 F.3d at 333). In *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190,

195 n.1 (3d Cir. 2010), the Third Circuit articulated the factors that inform whether a percentage

of recovery is appropriate:

> (1) [T]he size of the fund created and the number of persons benefitted; (2)
> the presence or absence of substantial objections . . . to the settlement terms and/or
> the fees requested by counsel; (3) the skill and efficiency of the attorneys involved;
> (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the
> amount of time devoted to the case; and (7) awards in similar cases.

Here, the *Gunter* factors counsel in favor of approving the requested fees. First, the

settlement stands to benefit over a thousand Operations Managers around the country. Courts in

the Third Circuit have approved similar contingency fees in comparable wage-and-hour

settlements. *See, e.g.*, *Starnes v. Amazon.Com, Inc.*, No. 23 Civ. 484, 2023 U.S. Dist. LEXIS

79515, at *18 (E.D. Pa. May 8, 2023) (approving attorneys' fee award of one third of $3 million

settlement that benefited over two thousand workers); *Fein v. Ditech Fin., LLC*, No. 16 Civ. 00660,

2017 U.S. Dist. LEXIS 158479, at *35 (E.D. Pa. Sept. 27, 2017) (approving a one-third

contingency fee out of a settlement fund of $1,383,000 benefitting 279 class members). The

settlement amount here is not a "mega-fund so large that a typical percentage award would be

unreasonable." *Stewart v. First Transit*, No. 18 Civ. 3768, 2019 U.S. Dist. LEXIS 239614, at *6

(E.D. Pa. Dec. 30, 2019) (approving 35% of $1 million settlement amount as attorneys' fees); *see

also Nguyen v. Educ. Comput. Sys., Inc.*, No. 22 Civ. 1743, 2024 U.S. Dist. LEXIS 140023, at *4

(W.D. Pa. Aug. 7, 2024) (approving $1.2 million fee award, where total settlement amount was

$3.65 million). The second *Gunter* factor also weighs in favor of the requested fees. Though

Notice has not yet gone out to Putative Settlement Collective Members, neither Named Plaintiffs nor Opt-in Plaintiffs have objected to the terms of the settlement.

Next, the skill and efficiency of the attorneys confirm that the requested fee is reasonable. "The quality of attorneys and the representation provided by them is judged by 'the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel' and 'the skill and professionalism with which counsel prosecuted the case.'" *Bellan v. Cap. Blue Cross*, No. 20 Civ. 744, 2022 U.S. Dist. LEXIS 43025, at *19 (M.D. Pa. Mar. 10, 2022) (citation omitted). Here, as evidenced by their success in this litigation, including early conditional certification, highly experienced wage-and-hour attorneys represented Plaintiffs. *See* Swartz Decl. ¶¶ 11-12. Collectively, Plaintiffs' attorneys have investigated, litigated, and settled hundreds of cases under the FLSA and state labor laws. *Id.* ¶ 13*; see Nguyen*, 2024 U.S. Dist. LEXIS 140023, at *5-6 (weighing relevant litigation experience of plaintiffs' counsel); *McGee*, 2014 U.S. Dist. LEXIS 75840, at *14-15 (describing experience of plaintiffs' counsel). Defendant's counsel is also experienced in wage-and-hour cases, and the success of Plaintiffs' counsel in litigating against capable defense attorneys is a "clear indication" of their skill. *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *57 ("Defendant[']s counsel are also savvy, experienced defense attorneys . . . and the ability to achieve a favorable result in a case involving such formidable defense counsel is a clear indication of the skill with which class counsel handled these cases."). In short, despite the difficulties of the litigation, including a motion to dismiss, the "standing, experience and expertise" of counsel allowed them to reach a favorable settlement for Putative Settlement Collective Members. *Bellan*, 2022 U.S. Dist. LEXIS 43025, at *19.

The complexity and duration of the litigation also weigh in favor of the requested attorneys' fees. "FLSA collective actions are, by their nature, complex." *Bellan*, 2022 U.S. Dist. LEXIS

43025, at *20 (citing *Brumley v. Camin Cargo Control, Inc.*, No. 08 Civ. 1798, 2012 U.S. Dist. LEXIS 40599, at *33-34 (D.N.J. Mar. 26, 2012) (same)).  This litigation has been ongoing for almost two years, and Plaintiffs investigated the matter for over a year before they filed their initial complaint.  Not only did Plaintiffs' attorneys clear the first hurdle in this case – conditional certification – but they engaged in a complex and unsuccessful mediation that set off months of follow-on negotiations.  In sum, this factor counsels in favor of awarding Plaintiffs' attorneys one third of the total settlement amount.  *See id.* (noting complexity and duration of FLSA case that parties litigated for a year and a half); *Stewart*, 2019 U.S. Dist. LEXIS 239614, at *6 (weighing fourth *Gunter* factor in attorneys' favor where they had "spent considerable hours litigating this matter for over a year").

Next, the risk of nonpayment is significant where counsel work on a contingency basis. *See Nguyen*, 2024 U.S. Dist. LEXIS 140023, at *8.  Plaintiffs' attorneys took on significant risk when they initiated this case with no guarantee of payment.  Counsel have continued to litigate the case vigorously – through motions practice and negotiations – despite the very real possibility of an unsuccessful outcome and no fee of any kind.  Swartz Decl. ¶¶ 30-31; *see Nguyen*, 2024 U.S. Dist. LEXIS 140023, at *8 ("Class Counsel assumed a substantial risk in filing and litigating this matter, which involved the investment of a considerable amount of attorney time, effort and money, on a fully contingent basis with no guarantee of any recovery."); *Tompkins v. Farmers Ins. Exch.*, No. 14 Civ. 3737, 2017 U.S. Dist. LEXIS 158478, at *27-28 (E.D. Pa. Sept. 27, 2017) (weighing representation on a contingent basis in approving requested attorneys' fees). Notwithstanding this risk, Plaintiffs' counsel devoted approximately 705 hours to this case, the sixth *Gunter* factor.  Swartz Decl. ¶ 32.  Given the duration and complexity of the investigation, litigation, and negotiations, including two full mediation sessions, Plaintiffs' attorneys spent a

23

reasonable amount of time on this matter. *See, e.g.*, *Starnes*, 2023 U.S. Dist. LEXIS 79515, at *20 (concluding that 621.5 hours devoted to FLSA case that involved extensive negotiations but no formal discovery weighed in favor of approval). The fifth and sixth *Gunter* factors therefore support counsel's request.

Ultimately, courts in the Third Circuit regularly approve attorneys' fees of one third of the total settlement amount in wage-and-hour cases. *See, e.g.*, *Nguyen*, 2024 U.S. Dist. LEXIS 140023, at *4, 12 (approving $1.2 million fee award out of $3.65 million total settlement amount); *Bellan*, 2022 U.S. Dist. LEXIS 43025, at *16-17 (approving requested attorneys' fee of one third of total settlement fund); *Fein*, 2017 U.S. Dist. LEXIS 158479, at *34-35 (approving a one-third contingency fee out of a $1.38 million settlement fund); *Tompkins*, 2017 U.S. Dist. LEXIS 158478, at *25 (allowing a 35% recovery of attorneys' fees from a settlement fund of $775,000); *Stewart*, 2019 U.S. Dist. LEXIS 239614, at *6-8 (approving 35% of $1 million settlement amount as attorneys' fees); *Devlin v. Ferrandino & Son, Inc.*, No. 15 Civ. 4976, 2016 U.S. Dist. LEXIS 170823, at *28 (E.D. Pa. Dec. 9, 2016) (approving fee award of one third of $1.55 million total settlement amount).

Moreover, this fee is consistent with the retainer agreement that Named Plaintiffs entered into with Plaintiffs' counsel. Swartz Decl. ¶ 30; *see Morales v. Unique Beginning Caterers Ltd. Liab. Co.*, No. 20 Civ. 10026, 2021 U.S. Dist. LEXIS 236744, at *8 (D.N.J. Dec. 10, 2021) (noting that retainer agreement included attorneys' fees of one third of settlement); *see also Sam Li v. Sushi to Go Cherry Hill, LLC*, No. 22 Civ. 4734, 2023 U.S. Dist. LEXIS 134886, at *14 n.7 (D.N.J. Aug. 3, 2023) ("Plaintiff's counsel confirmed that the requested attorney's fees were authorized by Plaintiff's retainer agreement.").

24

Courts in the Third Circuit may "cross-check" attorneys' fees against the lodestar method. *See In re Wawa, Inc.*, 141 F.4th 456, 476 (3d Cir. 2025). The lodestar formula "requires multiplying the number of hours reasonably expended by a reasonable hourly rate." *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 177 (3d Cir. 2001). "The lodestar crosscheck is performed by calculating the 'lodestar multiplier,' which is determined by dividing the requested fee award by the lodestar." *Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 766 (E.D. Pa. 2016) (citing *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006)). Ultimately, "in determining the lodestar for cross-check purposes, the Court need not engage in a full-blown lodestar inquiry with 'mathematical precision.'" *Rouse v. Comcast Corp.*, No. 14 Civ. 1115, 2015 U.S. Dist. LEXIS 49347, at *34 (E.D. Pa. Apr. 15, 2015); *see In re Rite Aid Corp.*, 396 F.3d 294, 305 (3d Cir. 2005) (explaining that, when performing a crosscheck of a percentage fee award, an "abridged lodestar analysis" is appropriate).

Here, a lodestar crosscheck militates in favor of approval of the requested attorneys' fees. Plaintiffs' counsel's lodestar is $557,140, which results in a multiplier of approximately 1.07. Swartz Decl. ¶ 33. This multiplier will likely decrease further as counsel continues to navigate the settlement process. *See Brumley*, 2012 U.S. Dist. LEXIS 40599, at *37 (noting that plaintiffs' counsel would continue to devote time to case following settlement approval). "Percentage of recovery fees have been approved when they represent up to four times what the lodestar recovery might represent." *Dominguez v. Galaxy Recycling, Inc.*, No. 12 Civ. 7521, 2017 U.S. Dist. LEXIS 88855, at *24 (D.N.J. June 9, 2017) (citing *In re Prudential*, 148 F.3d at 341). Courts in this District and in the Third Circuit regularly approve much larger multipliers. *See, e.g., In re Nat'l Football League Players' Concussion Injury Litig.*, 814 F. App'x 678, 683 n.8 (3d Cir. 2020) (A "multiplier of 2.96 [is] within the acceptable range in this Circuit[.]"); *Starnes*, 2023 U.S. Dist.

25

LEXIS 79515, at *25-26 ("We find a lodestar cross-check of between 3.57 and 2.62 within the range awarded in common fund cases."); *Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 18 Civ. 1007, 2019 U.S. Dist. LEXIS 182359, at *30 (W.D. Pa. Oct. 22, 2019) (concluding that multiplier of 2.54 was acceptable). Thus, because the lodestar multiplier is safely within the range approved by courts in this Circuit, the proposed attorneys' fees are reasonable under the lodestar crosscheck.

Plaintiffs' counsel also request reimbursement of out-of-pocket expenses. Attorneys may recover litigation costs that are incidental and necessary to the litigation. *See Nguyen*, 2024 U.S. Dist. LEXIS 140023, at *12-13 (approving attorneys' requested case-related expenses). To date, Plaintiffs' attorneys have incurred expenses exceeding $25,000, including mediation, filing, mail and shipping, and research costs. Swartz Decl. ¶ 34. These costs have been incidental and necessary to the prosecution of this case. Plaintiffs' counsel have agreed to cap their request for reimbursement of expenses at $25,000. Settlement Agreement § II.D.5.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) approve the $1,795,000 settlement amount as fair, adequate, and reasonable; (2) grant final certification of the collective for settlement purposes only; (3) authorize the distribution of the Notice Packet, in accordance with the terms of the Settlement Agreement; (4) approve service awards of $8,000 per Named Plaintiff; (5) approve Plaintiffs' request for one-third of the settlement funds in attorneys' fees and $25,000 in expenses; (6) enjoin Participating Settlement Collective Members from pursuing any released claims in the future; (7) dismiss the case with prejudice; and (8) retain jurisdiction to enforce the Settlement Agreement.

Dated: May 19, 2026                    Respectfully submitted,


                                       */s/ Glen D. Savits*
                                       Glen D. Savits
                                       GREEN SAVITS, LLC
                                       25B Vreeland Road #207
                                       Florham Park, NJ 07932
                                       Tel.: (973) 695-7777
                                       Email: gsavits@greensavits.com

                                       Justin M. Swartz*
                                       OUTTEN & GOLDEN LLP
                                       685 Third Avenue, 25th Floor
                                       New York, NY 10017
                                       Tel.: (212) 245-1000
                                       Email: jswartz@outtengolden.com

                                       Michael Palitz
                                       SHAVITZ LAW GROUP, P.A.
                                       477 Madison Avenue, 6th Floor
                                       New York, NY 10022
                                       Tel.: (800) 616-4000
                                       Email: mpalitz@shavitzlaw.com

                                       Gregg I. Shavitz*
                                       SHAVITZ LAW GROUP, P.A.
                                       951 Yamato Road, Suite 285
                                       Boca Raton, FL 33431
                                       Tel.: (561) 447-8888
                                       Email: gshavitz@shavitzlaw.com

                                       * Admitted pro hac vice

                                       *Attorneys for Plaintiffs and the Collective*

27